UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

JOSHUA A. DEMPS,

    Plaintiff,

    vs.                              Case No. 3-10-cv-621-J-12MCR

MICHAEL J. ASTRUE,
Commissioner of Social Security

    Defendant.
_____/

## REPORT AND RECOMMENDATION[1]

This cause is before the Court on Plaintiff's appeal of an administrative decision denying his application for Supplemental Security Income benefits. The Court has reviewed the record, the briefs, and the applicable law. For the reasons set forth herein, it is recommended the Commissioner's decision be **AFFIRMED.**

**I. PROCEDURAL HISTORY**

Plaintiff received Supplemental Security Income benefits as a child starting on October 1, 1992 for severe speech delay, mental retardation, and Attention Deficit Hyperactivity Disorder ("ADHD"). (Tr. 37, 206). Upon reaching age eighteen, Plaintiff's claim was reevaluated and it was determined Plaintiff could perform the mental demands of unskilled work rendering him no longer disabled as of June 1, 2007. (Tr.

---

[1] Any party may file and serve specific, written objections hereto within FOURTEEN (14) DAYS after service of this Report and Recommendation. Failure to do so shall bar the party from a de novo determination by a district judge of an issue covered herein and from attacking factual findings on appeal. See 28 U.S.C. §636(b)(1); Rule 72(b), Fed.R.Civ.P.; and Local Rule 6.02(a), United States District Court for the Middle District of Florida.

56-60). This determination was upheld upon reconsideration by a State Agency Disability Hearing Officer after which Plaintiff requested and received an initial hearing before an Administrative Law Judge (the "ALJ") on July 23, 2008. (Tr. 64-68). On August 18, 2008, the ALJ issued a decision finding Plaintiff not disabled as of June 1, 2007. (Tr. 13, 22-24). Plaintiff timely filed his appeal of the ALJ's decision.

## II.     NATURE OF DISABILITY CLAIM

### A.     Basis of Claimed Disability

Plaintiff claims he is a disabled adult entitled to benefits because of mental retardation and ADHD. (Tr. 24).

### B.     Summary of Evidence Before the ALJ

Plaintiff was nineteen (19) years old on the date of the hearing before the ALJ. (Tr. 250). He graduated high school in May 2007, earning a special high school diploma with Exceptional Student Education ("ESE") classes. (Tr. 187). Plaintiff has past relevant work experience as a restaurant dishwasher. (Tr. 144). Plaintiff was first placed on Social Security Income benefits in 1992 for severe speech delay, which was continued in 1999 and 2002 due to mental retardation and ADHD. (Tr. 224).

### School Records

On April 26, 2007, Plaintiff's ESE teacher, Verdell D. Long, completed a Teacher Questionnaire evaluating Plaintiff's skills based on Ms. Long's observations in the classroom. (Tr. 168-180). Ms. Long taught Plaintiff for three years in the subjects of learning strategies and intensive reading. (Tr. 168). In Section I of the Questionnaire, entitled "Acquiring and Using Information," Ms. Long indicated Plaintiff had "a very

serious problem" in the following areas: comprehending and doing math problems, expressing ideas in written form, learning new material, recalling and applying previously learned material, and applying problem-solving skills in class discussions. (Tr. 169). Plaintiff had "no problem" comprehending oral instructions. Id. In Section II of the Questionnaire, entitled "Attending and Completing Tasks," Ms. Long rated Plaintiff as having a "very serious problem" in the following areas: focusing long enough to finish assigned activity or task, carrying out multi-step instructions, organizing own things or school materials, completing class/homework assignments, completing work accurately without careless mistakes, working without distracting others, and working at reasonable pace/finishing on time. (Tr. 170). Plaintiff had "no problem" sustaining attention during play/sports activities or carrying out single-step instructions. Id. Plaintiff had "a slight problem" paying attention when spoken to directly and waiting to take turns. Id.

In Section III of the Questionnaire entitled, "Interacting and Relating With Others," Ms. Long indicated Plaintiff had "a very serious problem" in the following areas: seeking attention properly; expressing anger appropriately; following rules; respecting/obeying adults in authority; using language appropriate to the situation and the listener; introducing and maintaining relevant and appropriate topics of conversation; interpreting meaning of facial expression, body language, hints, and sarcasm; and using adequate vocabulary and grammar to express thoughts/ideas in general everyday conversation. (Tr. 171). Plaintiff had "a slight problem" playing cooperatively with children, making and keeping friends, asking permission appropriately, and relating experiences and telling stories. Id.

In Section IV of the Questionnaire entitled, "Moving About and Manipulating Objects," Ms. Long indicated Plaintiff had no problems and his functioning appeared age-appropriate. (Tr. 172). Likewise in Section V, Plaintiff had no observable problems caring for himself physically or emotionally. (Tr. 173).

**Medical Records**

Plaintiff has not taken medication for his condition since ninth grade. (Tr. 46). The earliest medical record provided to the Court is dated September 2, 2005, when school psychologist, Boone Alexander, M.D., indicated in a psychology report that Plaintiff had "overall cognitive ability in the deficit range, and generally consistent communication, social and self-help skills, with the exception of higher daily living skills reported by the reading teacher." (Tr. 189).

The next record is dated June 6, 2007, when Plaintiff was seen by Psychologist, Louis Legum, Ph.D., of North Florida Psychological Services, Inc. (Tr. 190). During his examination, Dr. Legum reviewed a previous psychological evaluation completed in June 2002, in which Plaintiff presented with a Full Scale IQ of 49, a Verbal IQ of 54, and a Performance IQ of 53 based on the Wechsler Intelligence Scale for Children-Third Edition (WAIS III). Id. Dr. Legum then reported Plaintiff's updated WAIS III scores of a Full Scale IQ of 64, a Verbal IQ of 69, and a Performance IQ of 63 noting a "markedly increased cognitive score." (Tr. 192). The updated scores indicated Plaintiff was in the mild range of mental retardation having a Global Assessment of Functioning between 60 and 65. (Tr. 192,193). Despite his mild retardation, at the time of the examination, Dr. Legum noted Plaintiff was oriented as to all three spheres, had articulate speech at a regular rate and rhythm, and had fair recent and remote memory. (Tr. 192). At that

time, Plaintiff also indicated he could dress himself and complete routine self-care, he had his driver's license and his own car, and had been in a relationship with his girlfriend for one year. (Tr. 190-91). To summarize, Dr. Legum did not feel Plaintiff manifested "any psychopathology beyond his cognitive deficits." (Tr. 192).

On June 22, 2007, Plaintiff was seen by Alejandro Vergara, M.D. for a Psychiatric Review. (Tr. 194). Dr. Vergara reported Plaintiff was:

> appropriately dressed, cooperative, was oriented X3, Speech articulate, clear. Mood euthymic with broad affect. Denied suicidal ideations or plans. There was no evidence of thoughts of disorder, delusions or hallucinations. Recent and remote memory, fair. Concentration adequate. Judgment and insight fair.

(Tr. 206). Plaintiff stated he lived with family, but took care of his personal needs and hygiene independently. Id. Plaintiff also reported the ability to prepare meals by himself and perform household chores with reminders. Id. For social activities, Plaintiff attended church and talked on the phone with friends. Id.

A Mental Residual Functional Capacity Assessment ("MRFCA") was also performed by Dr. Vergara on that date. In the majority of the categories, Plaintiff was found "not severely limited", however the assessment indicated Plaintiff was "moderately limited" in the following areas:

- The ability to understand and remember detailed instructions.
- The ability to carry out detailed instructions.
- The ability to maintain attention and concentration for extended periods.
- The ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods.
- The ability to respond appropriately to changes in the work setting.
- The ability to set realistic goals or make plans independently of others.

(Tr. 208-11). Despite these findings, Dr. Vergara stated, "claimant retains the mental capabilities necessary to at least be able to do simple, repetitive type tasks and assignments." (Tr. 211).

On August 3, 2007, another Psychiatric Review and MRFCA were completed by Michael Zelenka, Ph.D. (Tr. 212). Dr. Zelenka indicated Plaintiff was moderately limited in maintaining concentration, persistence, or pace; was mildly limited in activities of daily living; but had no limitations maintaining social function or episodes of decompensation. (Tr. 222). The new MRFCA results were similar to those of Dr. Vergara except Dr. Zelenka found no restrictions in Plaintiff's ability to interact appropriately with the general public and found only mild instead of moderate limitations in Plaintiff's abilities to complete a normal workday and workweek without interruptions and to respond appropriately to changes in the work setting. (Tr. 227). Dr. Zelenka noted Plaintiff had no other physical or mental impairments apart from mild mental retardation. (Tr. 228).

### C. Summary of the ALJ's Decision

Section 1614(a)(3) of the Social Security Act ("the Act"), provides that individuals who are eligible for supplemental security income benefits under the age of eighteen, must have their disability redetermined under the rules for disability used for adults. Section 1614(a)(3)(H) of the Act also provides that the medical improvements review standard in section 1614(a)(4) does not apply to disability redeterminations at age 18. Instead, the definition of disability used for adults who file new applications for supplemental security income benefits based on disability must be applied. Id.

A five-step process is used to determine whether an individual age 18 or older is

disabled. 20 C.F.R. § 416.920(a). The first step applies to individuals who are engaging in substantial gainful activity. 20 C.F.R. § 416.920(b). However, this step is not used for redetermining disability at age 18. 20 C.F.R. § 416.987(b). At step two, it must be determined whether the claimant has any impairment or a combination of impairments which significantly limit his physical or mental ability to do basic work activities. If the claimant does not have a severe impairment, he is not disabled. 20 C.F.R. § 416.920(c).

At step three, the ALJ must determine whether the claimant's impairments meet or equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. 20 C.F.R. §§ 416.920(d), 416.920, 416.926. If the impairments meet or equal the criteria of a listing and meet the duration requirement, the claimant is disabled. 20 C.F.R. § 416.909. If the impairments do not, the analysis proceeds to the next step.

At step four, if a claimant's impairments do not prevent him from doing past relevant work, he is not disabled. 20 C.F.R. § 416.920(a)(4)(iv). Fifth, if a claimant's impairments (considering his residual functional capacity, age, education, and past work) prevent him from doing other work that exists in the national economy, then he is disabled. 20 C.F.R. § 416.920(a)(4)(v). Plaintiff bears the burden of persuasion through step four, while at step five, the burden shifts to the Commissioner. Bowen v. Yuckert, 482 U.S. 137, 146 n.5, 107 S.Ct. 2287 (1987).

In the instant case, step one does not apply because Plaintiff is seeking to redetermine his disability after reaching age 18. At step two, the ALJ found Plaintiff was severely impaired due to his mental retardation pursuant to 20 C.F.R. § 416.920(c). (Tr. 15, Finding 2). At step three, the ALJ stated that since June 1, 2007, "the claimant has

not had an impairment or combination of impairments that medically meets or equals any of the impairments listed in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR §§ 416.925 and 416.926)." (Tr. 15, Finding 3). In rendering her decision, the ALJ evaluated Plaintiff's mental impairment under the requirements of Listing 12.05, and found the impairment did not meet the requirements of paragraphs A, B, C, or D.

With respect to Plaintiff's residual functional capacity ("RFC"), the ALJ found Plaintiff had the ability to perform the full range of work at all exertional levels but with the following non-exertional limitations: "The claimant is moderately limited in the ability to understand, remember, and carry out detailed instructions; to maintain attention and concentration for extended periods; and to set realistic goals or make plans independently of others." (Tr. 17, Finding 4). The ALJ believed that while Plaintiff's medically determinable impairments could reasonably be expected to produce the alleged symptoms, Plaintiff's statements regarding the "intensity, persistence, and limiting effects" of the symptoms were not credible. (Tr. 18).

At step four, the ALJ determined since June 1, 2007, Plaintiff could not perform any of his past relevant work as a dishwasher, which is light in exertional capacity and unskilled. (Tr. 20). Accordingly, the ALJ proceeded to step five where she utilized the Medical-Vocational Guidelines (the "grids") and determined that based on Plaintiff's "age, education, work experience, and residual functional capacity, the claimant was able to perform a significant number of jobs in the national economy" and therefore, "a finding of 'not disabled' [was] appropriate under the framework of Section 204.00 in the Medical-Vocational Guidelines." Id.. Accordingly, the ALJ found Plaintiff's disability ended on June 1, 2007, and Plaintiff had not become disabled again since that date. Id.

## III. ANALYSIS

### A. The Standard of Review

The scope of this Court's review is limited to determining whether the ALJ applied the correct legal standards, McRoberts v. Bowen, 841 F.2d 1077, 1080 (11th Cir. 1988), and whether the findings are supported by substantial evidence. Richardson v. Perales, 402 U.S. 389, 390, 91 S.Ct. 1420 (1971). The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is more than a scintilla – i.e., the evidence must do more than merely create a suspicion of the existence of a fact and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion. Foote v. Chater, 67 F.3d 1553, 1560 (11th Cir. 1995) (citing Walden v. Schweiker, 672 F.2d 835, 838 (11th Cir. 1982) and Richardson, 402 U.S. at 401).

Where the Commissioner's decision is supported by substantial evidence, the district court will affirm, even if the reviewing court finds that the evidence preponderates against the Commissioner's decision. Edwards v. Sullivan, 937 F.2d 580, 584 n.3 (11th Cir. 1991); Barnes v. Sullivan, 932 F.2d 1356, 1358 (11th Cir. 1991). The district court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision. Foote, 67 F.3d at 1560; accord Lowery v. Sullivan, 979 F.2d 835, 837 (11th Cir. 1992) (explaining the court must scrutinize the entire record to determine the reasonableness of the factual findings).

B.  **Issues on Appeal**

There are two main issues before the Court. The first issue is whether substantial evidence supports the ALJ's finding that Plaintiff does not meet the requirements of listing 12.05(C). (Doc. 16, p. 7). The second issue is whether the ALJ erred by relying only on the grids to determine Plaintiff was not disabled within the meaning of the Social Security Act. (Doc. 16, p. 11). Each issue is addressed in turn below.

1.  **Whether the ALJ erred in finding the Plaintiff did not meet the requirements of listing 12.05(C).**

Plaintiff contends the ALJ erred by failing to find Plaintiff had an impairment or combination of impairments which satisfied the requirements of listing 12.05(C). (Doc. 16, p. 9-11). Specifically, he claims the Teacher Questionnaire of Verdell Long is substantial evidence Plaintiff had an additional severe physical or mental impairment. Id. The Commissioner responds the ALJ's finding Plaintiff did not meet the requirements of 12.05(C) was proper and the ALJ gave adequate consideration to the entire record. (Doc. 19, p. 6-10).

Plaintiff's mental impairments were evaluated under Listing 12.05 for mental retardation. See Section 12.05 et seq., Mental Retardation.[2] To meet the requirements of paragraph C, Plaintiff must demonstrate:

> A valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an

---

[2] Mental retardation refers to significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period; *i.e.*, the evidence demonstrates or supports onset of the impairment before age 22. 20 C.F.R. pt. 404, Subpart P, Appendix 1 § 12.05(C).

10

      additional and significant work-related limitation or function.

Id.

      The ALJ determined the requirements of paragraph C were not met because Plaintiff failed to demonstrate a physical or other mental impairment imposing an additional and significant work-related limitation or function apart from mental retardation. (Tr. 16). In rendering her decision, the ALJ considered the impressions of Dr. Legum, who opined Plaintiff had mild mental retardation, but no additional impairments. (Tr. 193). The ALJ also considered the evaluations of Drs. Vergara and Zelenka. (Tr. 19). Both State agency psychological consultants did not find Plaintiff met Listing 12.05(C). (Tr. 15, 19, 198, 216). Dr. Zelenka found Plaintiff had "no other physical or mental impairments," apart from his diagnosis of mild mental retardation. (Tr. 228). Dr. Vergara stated, "claimant retains the mental capabilities necessary to at least be able to do simple, repetitive type tasks and assignments." (Tr. 210).

      In order for Plaintiff to show an additional severe physical or mental impairment, the impairment must be distinct and separate from mental retardation. 20 C.F.R. pt. 404, Subpart P, Appendix 1 § 12.05(C); see also L.R.M. ex rel McCracklin v. Social Security Admin., 404 F.App'x 415, 417 (11th Cir. 2010). If the impairments are not discrete and separate, then the ALJ's finding may not be disturbed. Id.

      The case of L.R.M. ex rel McCracklin, provides some guidance as to what qualifies as a discrete and separate impairment. In that case, plaintiff argued her memory problems qualified as an additional impairment separate and distinct from her borderline intellectual functioning. Id. at 417. However, the record evidence

11

established the short-term memory problems were directly related to her intellectual functioning. Id.

In the instant case, Plaintiff seeks to establish that the Teacher Questionnaire of Verdell Long is substantial evidence of an additional impairment, separate and distinct from his mental retardation. (Doc. 16, pp. 9-11). Plaintiff claims the Questionnaire demonstrates severe impairments in acquiring and using information, attending and completing tasks, and interacting and relating with others. (Doc. 16, pp. 9-11). However, a review of the evidence suggests that the limitations highlighted in the Questionnaire are the same limitations which stem from Plaintiff's mild mental retardation. Drs. Legum and Zelenka evaluated Plaintiff's condition as mild mental retardation with no evidence of additional impairments. (Tr. 192, 198, 212, 216). In rendering their findings, Drs. Vergara and Zelenka each completed a MRFCA. (Tr. 208, 226). The areas evaluated included: understanding and memory, sustained concentration and persistence, social interaction, and adaptation. Id. These categories directly address the so-called additional impairments suffered by Plaintiff, and are thus, not separate and distinct so as to satisfy the requirements of Listing 12.05(C). Accordingly, the undersigned believes the ALJ's finding that Plaintiff did not meet the requirements of Listing 12.05(C) was proper.

> **2. Whether the ALJ erred in failing to call a vocational expert when Plaintiff suffered from non-exertional limitations.**

Plaintiff next argues the ALJ improperly utilized the grids because Plaintiff's mental impairment imposed non-exertional limitations on his ability to work and therefore, required the use of a vocational expert. (Doc. 16, p. 11). Specifically, Plaintiff

12

argues the non-exertional limitations (*i.e.*, his moderate limitations in the ability to understand, remember, and carry out detailed instructions; maintain attention and concentration for extended periods; and set realistic goals or make plans independently of others) required the ALJ to utilize a vocational expert in this case. (Doc. 16, p.13). The Commissioner responds that the ALJ's use of the grids was proper because, although Plaintiff's non-exertional limitations precluded strict application of the grids, Plaintiff did not suffer from a substantial loss of ability to meet the demands of basic unskilled work. (Doc. 19, pp. 11-14).

Because the ALJ found Plaintiff could not return to his past relevant work, the burden of proof shifted to the Commissioner to establish Plaintiff could perform other work in the national economy. Foote, 67 F.3d at 1558. The Eleventh Circuit has determined that to satisfy this burden, an ALJ may:

> use the grids to determine whether other jobs exist in the national economy that a claimant is able to perform. However, "[e]xclusive reliance on the grids is not appropriate either when [the] claimant is unable to perform a full range of work at a given residual functional level or when a claimant has non-exertional impairments that significantly limit basic work skills."

Phillips v. Barnhart, 357 F.3d 1232, 1242 (11th Cir. 2004) (internal citations omitted). The first inquiry, whether a claimant is able to perform a full range of work at a given residual functional level, only applies to exertional limitations. Brown v. Astrue, No. CV608-036, 2009 WL 2135005, at *4 (S.D. Ga. July 15, 2009). In the instant case, the ALJ explicitly found Plaintiff had no such limitations. (Tr. 17, Finding 4).[3] Therefore,

---

[3] Additionally, Plaintiff's counsel stated at the hearing that no exertional or physical issues were present in this case. (Tr. 246).

13

pursuant to Phillips, the ALJ was required to utilize a vocational expert only if Plaintiff's non-exertional limitations significantly limited his ability to perform basic work skills. The Eleventh Circuit has interpreted "significantly limit basic work skills" to mean "limitations that prohibit a claimant from performing 'a wide range' of work at a given work level." Phillips, 357 F.3d at 1243. This includes both the exertional (sedentary, light, medium, heavy, and very heavy work) as well as the non-exertional (unskilled, semi-skilled, and skilled work) components. Brown, 2009 WL 2135005, at *4.

In the instant case, the ALJ found no exertional limitations, so the inquiry was limited to whether Plaintiff's non-exertional limitations prevented him from performing a wide range of work. The ALJ found Plaintiff's non-exertional limitations "ha[d] little or no effect on the occupational base of unskilled work[4] at all exertional levels." (Tr. 20). The medical records and testimony of Plaintiff show he can function under the basic mental demands of unskilled work, including the ability to understand, carry out, and remember simple instructions; to respond appropriately to supervision, coworkers, and usual work situations; and to deal with changes in a routine work setting. See SSR 85-15. Although Plaintiff has moderate difficulty understanding, remembering and carrying out *detailed* instructions; when given short and simple instructions, Plaintiff is not significantly limited. (Tr. 208, 226). Drs. Vergara and Zelenka found no significant limitations in Plaintiff's ability to interact socially or his ability to adapt to changes in a

---

[4] "Unskilled work is work which needs little or no judgment to do simple duties that can be learned on the job in a short period of time. The job may or may not require considerable strength. For example, we consider jobs unskilled if the primary work duties are handling, feeding and offbearing (that is, placing or removing materials from machines which are automatic or operated by others), or machine tending, and a person can usually learn to do the job in 30 days, and little specific vocational preparation and judgment are needed. A person does not gain work skills by doing unskilled jobs." 20 C.F.R. § 416.968(a).

routine work environment. (Tr. 209, 227). Furthermore, Plaintiff's testimony of his daily activities support these findings. Plaintiff testified he performs household chores, cooks, mows the lawn, fixes the lawn mower, attends church every Sunday, plays the drums, listens to music, speaks on the phone with friends, and drives his personal car daily. (Tr. 247-250). The ALJ noted:

> Even the minimal operation of a motor vehicle requires substantial attention and concentration, understanding, remembering, and carrying out of complex functions, and the substantial exercise of independent judgment.

(Tr. 19). Accordingly, the ALJ's finding that Plaintiff's non-exertional limitations "ha[d] little or no effect on the occupational base of unskilled work at all exertional levels" (Tr. 20) is supported by substantial evidence.

"When non-exertional impairments have little or no effect on the occupational base of unskilled work, a claimant can still perform a wide range of work and thus a vocational expert is not required." Brown, 2009 WL 2135005, at *4 (citing Williams v. Astrue, No. 3:08-cv-608, 2009 WL 902485, at *5 (M.D. Ala. Mar.31, 2009) (citing SSR 83-14 and 85-15, which indicate that there are thousands of unskilled jobs at all exertional levels); and Koenig v. Astrue, No. CIV S-06-2033 KJM, 2008 WL 850032 at *6 (E.D. Cal. Mar. 28, 2008) (where claimant's non-exertional limitations would not "significantly erode" the full range of unskilled jobs, SSR 85-15 permits an ALJ to proceed without a vocational expert)). Accordingly, the ALJ's reliance on the grids was appropriate.

## IV. CONCLUSION

For the foregoing reasons, the undersigned finds the ALJ's decision is supported by substantial evidence and is based upon the proper legal standards. Accordingly, it is hereby

**RECOMMENDED:**

The Commissioner's decision be **AFFIRMED.**

**DONE AND ENTERED** at Jacksonville, Florida, this  2nd  day of August, 2011.

*Monte C. Richardson*
MONTE C. RICHARDSON
UNITED STATES MAGISTRATE JUDGE

Copies to:

Counsel of Record

The Honorable Howell W. Melton,
United States District Judge